UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
ALBERTO RIVERA,

       Plaintiff,

– against –

TENAGLIA AND HUNT, P.A.,

       Defendant.
-------------------------------------------------------------------

Case No.: 1:26-00400

**COMPLAINT AND JURY DEMAND**

## PRELIMINARY STATEMENT

Plaintiff Alberto Rivera ("Rivera" or "Mr. Rivera") files suit against Defendant Tenaglia and Hunt, P.A. ("Tenaglia" or "Tenaglia and Hunt"), for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. sec.* (the "FDCPA") and committing gross negligence, and alleges as follows:

## SUMMARY OF CLAIMS[1]

Plaintiff Alberto Rivera was shocked to learn that Barclays Bank Delaware ("Barclays") had filed a lawsuit against him in Queens County Civil Court—not just because he does not recognize the debt, but because he only learned of this lawsuit after his bank account was restrained pursuant to a default judgment obtained by Tenaglia. Further, the funds restrained were exempt from levy and garnishment, as the two sources of funds in Mr. Rivera's account were a worker's compensation award stemming from an on-the-job injury and Social Security Disability benefits. Worker's compensation awards and funds from the Social Security

---

[1] This summary is for the convenience of Defendant and the Court. The summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

1

Administration are protected from garnishment and levy by New York and federal law. Despite the exempt status of Mr. Rivera's funds, and Mr. Rivera's repeated notification of Defendant as to the exempt status of the restrained funds including through his timely submission to Defendant of an executed Exemption Claim Form to invoke his rights under New York's Exempt Income Protection Act, Defendant continued to restrain Mr. Rivera's bank account containing solely exempt funds for three months, filing an opposition to Mr. Rivera's motion to vacate the judgment and have the restraint lifted even after Mr. Rivera provided notice and irrefutable proof of the fact that the restrained funds were exempt. After Mr. Rivera succeeded in obtaining a court order lifting the restraint and sought to vacate the underlying judgment, maintaining his defenses that he had never been served and did not recognize or incur the underlying debt, Tenaglia still vigorously opposed, obtaining multiple adjournments of a traverse hearing before ultimately failing to appear at the traverse hearing, claiming they needed more time to contact the process server despite Mr. Rivera putting them on notice about his meritorious defenses months prior. Defendant thereby forced Mr. Rivera, a disabled man, to make multiple unnecessary trips to court before he could finally secure the vacatur of the judgment and dismissal of the complaint.

## THE PARTIES

1. Plaintiff Alberto Rivera is an individual who resides in Queens County, New York.

2. Mr. Rivera is a consumer as defined by 15 U.S.C. § 1692a(3) because he was alleged to owe a debt to Barclays Bank Delaware, arising from a credit card. Plaintiff's alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5) because it was incurred primarily for family, personal, or household purposes.

3. Defendant Tenaglia and Hunt, P.A. ("Tenaglia") is a debt collection law firm

organized under the laws of the State of New Jersey which files thousands of collection actions in New York and New Jersey courts. Tenaglia engages in business in New York State and this suit arises out of Tenaglia's business in New York State. Tenaglia's principal place of business is in Rochelle Park, NJ 07662.

4. Tenaglia is a debt collector as defined in 15 U.S.C. § 1692a(6) as they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be due another, and that is their principal purpose. Specifically, Tenaglia files thousands of collections lawsuits in civil court and seeks to enforce thousands of putative debts.

## STATEMENT OF FACTS

**Tenaglia (Belatedly) Uses a False Affidavit of Service to Obtain a Fraudulent Judgment**

5. On October 30, 2018 Tenaglia filed a lawsuit captioned *Barclays Bank Delaware against Alberto Rivera*, index number CV-037556-18/QU, in Queens County Civil Court, seeking to collect on a putative Barclays credit card debt. **Exhibit A** (Summons and Complaint).

6. Mr. Rivera was never served with the summons and complaint for the Collection Lawsuit, nor did he receive a copy in the mail. He knew nothing of the lawsuit until years later, when his bank account was restrained.

7. In the initial affidavit of service for this case, process server Steve Kemp swears that he served Mr. Rivera at 5:25 PM on January 2, 2019 by leaving the Summons and Complaint at Mr. Rivera's then-current address, with a Jane Doe described as a 44-year-old white woman between 5'4" and 5'7".

8. The only woman Mr. Rivera lives with is his wife, a Hispanic woman who does not fit this description.

9. Mr. Rivera's primary sources of income are a worker's compensation award and

3

Social Security Disability Insurance (SSDI), both of which are exempt from garnishment, levy, and restraint. These sources of income were also the sources of the funds which were unlawfully restrained.

10. Mr. Rivera does not recognize the Barclays debt alleged in the initial lawsuit.

11. Tenaglia and Hunt claims to have sent a demand letter to Mr. Rivera on September 24, 2018. Mr. Rivera does not recall ever receiving this letter.

12. The lawsuit was filed on October 30, 2018, in Queens County Civil Court. **Exhibit A** (Summons and Complaint).

13. The Affidavit of Service filed in support of the lawsuit states that service was effected on January 2, 2019, via substitute service on a Jane Doe who does not match the description of anyone Mr. Rivera lives with. **Exhibit B** (Affidavit of Service).

14. A Notice of Default was signed on April 25, 2019 and purportedly mailed on April 29, 2019. Despite this, Defendants did not enter the judgment until February 11, 2025. **Exhibit C** (Notice of Default), **Exhibit D** (Notice of Entry). At this time, defendants claim to have mailed a Notice of Entry to Mr. Rivera.

15. New York's Civil Practice Law and Rules generally prohibit plaintiffs from moving for default judgment more than one year after the defendant's default. CPLR § 3215(c).

**Tenaglia Uses the Fraudulent Judgment To Restrain Exempt Funds in Mr. Rivera's Bank Account, and Refuses to Release the Restraint, Forcing Mr. Rivera to Go to Court**

16. On March 10, 2025, Mr. Rivera learned his Bank of America bank account was restrained. All of the money in Mr. Rivera's bank account is exempt from lawful restraint.

17. The bank restraint was the first time he learned that there was a lawsuit filed against him. He never received a copy of the summons and complaint by mail or in any other manner, and received no notice in any form that there was a lawsuit filed against him, much less

a resulting judgment.

19. He called Tenaglia and Hunt this same day, but as he received notice after 5 PM, Tenaglia and Hunt was closed.

18. As soon he learned the bank account was restrained, Mr. Rivera immediately contacted Bank of America and was given Tenaglia and Hunt's contact information.

19. He called Tenaglia and Hunt this same day, but as he received notice after 5 PM, Tenaglia and Hunt was closed.

20. The next day, March 11, 2025, Mr. Rivera called Tenaglia and Hunt shortly after they opened at 9 AM. Nobody answered the phone, so Mr. Rivera left a message attempting to explain that he did not recognize this debt, he had not been served with the summons and complaint, and that the restrained funds were exempt.

21. On March 12, 2025, Mr. Rivera went to a local Bank of America branch and spoke to the manager, who also called Tenaglia and Hunt and also received no answer.

22. On March 13, 2025, Mr. Rivera received a written restraining notice from Bank of America, along with a blank Exemption Claim Form.

23. On March 14, 2025, Mr. Rivera again called Tenaglia and Hunt to attempt to explain that he did not recognize this debt, that he had not been served with a summons and complaint, and that the restrained funds were exempt. Once again, he had to leave a message because nobody picked up the phone.

24. On March 18, 2025, with assistance from Queens CLARO, Mr. Rivera filed an Order to Show Cause as to why the default judgment should not be vacated for improper service and demonstrating that all funds in the restrained account were exempt. **Exhibit E** (Order to Show Cause).

25. On March 25, 2025, Mr. Rivera mailed a copy of the Order to Show Cause to Tenaglia and Hunt.

5

26. On March 28, 2025, Mr. Rivera sent a letter to Tenaglia and Hunt and Bank of America requesting the release of his exempt funds, with the executed Exemption Claim Form enclosed. **Exhibit F** (March 28, 2025 Letter and packet of documents, including exemption claim form). This packet included fifty pages of documentation demonstrating that the restrained funds were exempt, including bank statements from multiple accounts dating back to the date of his worker's compensation award, copies of his worker's compensation pay stub and Social Security Disability benefit letter, and a spreadsheet tallying and tracking the various deposits and transfers of exempt funds to demonstrate that as a matter of arithmetic the restrained funds were entirely exempt.

27. Under New York's Exempt Income Protection Act, upon receipt of a timely and properly executed Exemption Claim Form such as Mr. Rivera's, the attorney or judgment creditor is obligated to instruct the bank to release the restraint and allow the putative judgment debtor to access the funds claimed to be exempt, with or without a court order to that effect and entirely distinct from efforts to vacate a judgment (such as Mr. Rivera's Order to Show Cause.)

28. This did not occur. Instead, Tenaglia ignored Mr. Rivera's Exemption Claim Form and continued to hold his money.

29. Finding merit to Mr. Rivera's Order to Show Cause application, on April 16, 2025, Queens Civil Court Judge Michael A. Goldman issued an order lifting all restraints on Mr. Rivera's Bank of America account. The judge specifically held that Mr. Rivera "has shown that the account ending in 1868 consists entirely of exempt funds." **Exhibit G** (April 16, 2025 Order). The Order set a hearing for June 17, 2025, and a briefing schedule for Tenaglia to file an opposition to the Order to Show Cause by May 16, 2025 and Mr. Rivera to file a Reply by June 13, 2025.

30. On May 14, 2025, Mr. Rivera sent a second packet attaching a copy of the April 16 Order to release the restraint on the exempt funds, and the same extensive documentation that the funds were exempt as were enclosed with his March letter, once again demanding the return of his exempt funds pursuant to the Order and the Exemption Claim Form. **Exhibit H** (May 14, 2025 Letter and packet).

31. Tenaglia finally and belatedly released Mr. Rivera's money on May 21, 2025.

### *Tenaglia Doubles Down and Opposes the Order to Show Cause*

32. Mr. Rivera contended that he had never been served and does not live with anyone who matches the description of the Jane Doe allegedly served, and therefore that the court lacked jurisdiction to enter the judgment against him. Mr. Rivera also contended that the alleged debt did not belong to him.

33. Mr. Rivera's Order to Show Cause also contained evidence that all the restrained funds were exempt funds.

34. Tenaglia sought and obtained many adjournments of a hearing on his Order to Show Cause. Tenaglia adjourned the March 18, 2025 Order to Show Cause three times, from April 16, 2025, to June 17, 2025, then from June 17, 2025 to August 21, 2025, and finally from November 5, 2025 to December 16, 2025. (Mr. Rivera adjourned the hearing from August 21, 2025 to November 5, 2025 due to a hospitalization.)

35. Tenaglia did not serve their Opposition to the Order to Show Cause by May 16 as ordered by the Court. Instead, they simply appeared at the hearing, emailed, ex parte, a copy of their opposition papers to the Court attorney, and did not provide a copy to Mr. Rivera before the hearing. This forced Mr. Rivera to attend yet another hearing in order for him to be able to review the Opposition and to file a Reply. Tenaglia did this for the specific reason of continuing

to drag out the Order to Show Cause process, in the hopes of either forcing payment or hoping that Mr. Rivera would miss the next hearing and thus have his application denied on default.

36. Tenaglia claimed that Mr. Rivera failed to raise an argument of excusable default and meritorious defense, filing a number of exhibits, none of which addressed the arguments raised by Mr. Rivera's Order to Show Cause and its supporting documentation. **Exhibit I** (June 9, 2025 Opposition.) This frivolous and meritless objection to Mr. Rivera's Order to Show Cause prolonged Mr. Rivera's ordeal by months.

37. On October 31, 2025, Mr. Rivera submitted a Reply reiterating his previous defenses and also noting that, pursuant to CPLR § 3215(c), "[i]f a plaintiff fails to take proceedings for the entry of default judgment within one year after the default, the court shall not enter judgment but shall dismiss the complaint as abandoned, upon its own initiative or on motion […] unless sufficient cause is shown why the complaint should not be dismissed." The Reply noted that, according to the court's case summary, Tenaglia failed to take proceedings for the entry of judgment—or act at all in this case, for that matter—for periods of more than one year after the date of the notice of default on multiple occasions, including the period from August 11, 2021 to October 12, 2022, and the period from February 12, 2023 to August 14, 2024.

38. The date of the alleged default was April 25, 2019, and Tenaglia did not move to enter the default judgment until 2025, nearly six full years later. **Exhibit J** (October 31, 2025 Reply.)

39. Mr. Rivera's Reply also noted that Tenaglia's Opposition also failed to note whatsoever that the funds in Mr. Rivera's bank account restrained since March 10, 2025, consisted entirely of exempt Social Security Disability funds. In his Order to Show Cause Mr.

8

Rivera raised this issue, making Tenaglia's continued restraint of Mr. Rivera's exempt funds unlawful independent of their fraudulently obtained judgment.

40. Tenaglia then secured two adjournments of the traverse hearing, pushing the traverse hearing back from June to August and then from November to December. (Mr. Rivera obtained the adjournment in August due to a hospitalization and was not able to get another hearing until November.)

41. At a November 5, 2025 hearing, after Mr. Rivera had submitted his reply papers in opposition on October 31, 2025, Tenaglia twice pressed a judge to disregard Mr. Rivera's reply papers. Initially, Tenaglia claimed they had never received them, until Mr. Rivera noted that he had a tracking number confirming the mailing of his reply papers had been delivered; after this, Tenaglia simply attempted to convince a judge to ignore Mr. Rivera's reply and his right to due process, which the judge of course rejected, promising to review all the submitted papers and issue her decision within thirty days.

42. On December 4, 2025, the Court issued an Order concluding that Mr. Rivera successfully rebutted the process server's affidavit and set the matter down for a traverse hearing on December 16, 2025.  See **Exhibit K** (December 4, 2025 Order Setting Traverse hearing).

43. On December 12, 2025, Tenaglia again attempted to adjourn the traverse hearing, filing a letter with the court requesting an adjournment of the Traverse Hearing "to confirm the availability of the process server." *See* **Exhibit L** (December 12, 2025 Adjournment Letter). This was just the latest attempt by Tenaglia to drag out proceedings in hopes of wearing down Mr. Rivera to either pay or to default at the next hearing.

44. On December 16, 2025, neither Tenaglia nor the process server appeared at the traverse hearing, and Civil Court Judge Melissa Deberry vacated the judgment and dismissed the

complaint. **Exhibit M** (December 16, 2025 Order Vacating Judgment and Dismissing Complaint.)

45. Each time a hearing was rescheduled, Mr. Rivera had to plan transportation to and from court for the new hearing date, incurring expenses. Each new hearing date was an added source of stress and worry for Mr. Rivera, and he knew each new hearing date meant he had to wait even longer for confirmation that he would not be held responsible for a debt he did not recognize and did not owe.

### *The Collection Lawsuit Caused Mr. Rivera Significant Stress and Forced Him to Incur Travel Expenses and Inflicted Emotional Distress Damages*

46. Upon seeing his money taken and consequently learning of the lawsuit, Mr. Rivera was shocked, upset, confused, and aggravated, a feeling that persisted throughout his fruitless efforts to communicate with Tenaglia & Hunt and secure the return of his funds.

47. Mr. Rivera is disabled, with diabetes-related kidney problems as well as torn ligaments in his elbow from an on-the-job injury, and living on a fixed income. The prospect of a large money judgment against him caused a significant deal of stress.

48. As a result of Tenaglia & Hunt's wrongful restraint of his funds and relentless pursuit of an improper judgment, Mr. Rivera became short-tempered and easily frustrated with his family members, including his two children. This caused Mr. Rivera additional stress and feelings of guilt, as Mr. Rivera is a devoted father who values his relationship with his children. Mr. Rivera more generally became noticeably irritable and tired in his daily activities and interactions.

49. Mr. Rivera struggled to sleep as a result of the ordeal, often finding himself awake and restless in the early hours of the morning. Mr. Rivera also developed a persistent headache from the stress and lack of sleep.

50. Mr. Rivera became nervous and paranoid about all of his bank accounts and other financial assets and liabilities as a result of this experience, constantly checking his accounts even when he knew he had not used them since he last checked, now fearing another unanticipated restraint.

51. The loss of thousands of dollars in SSDI and worker's compensation created significant financial stress for Mr. Rivera. Mr. Rivera has felt a great deal of uncertainty and aggravation ever since the unlawful seizure of his only sources of income—all to satisfy a debt Mr. Rivera does not recognize.

52. Because he is disabled and does not own a car, Mr. Rivera had to take an Uber to and from court on some occasions, incurring costs.

**FIRST CAUSE OF ACTION**
Violation of the FDCPA, 15 U.S.C. §§ 1692e 1692f

53. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

54. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

55. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess.

5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

56. The obligation alleged to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because they were charges made on card were for personal, family, or household purposes.

57. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt" as defined by 15 U.S.C. § 1692a(5).

58. For the reasons set forth in the "Parties" section of this Complaint, Defendant is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

59. Defendant violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; falsely representing or implying that a communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly

authorized by the agreement creating the debt or permitted by law.

60. As a direct and proximate result of the Defendant's violations, Plaintiff has suffered damages, including, *inter alia*, significant emotional distress, embarrassment, humiliation, and travel costs.

61. The injuries inflicted on Plaintiff by the Defendant are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

62. Plaintiff suffered economic injuries that historically have provided a basis for lawsuits in American courts, including but not limited to out-of-pocket expenses for rideshare services to attend court hearings and other travel costs.

63. Plaintiff's injuries are analogous to, *inter alia*, the following common law claims: defamation, negligence, invasion of privacy, intrusion upon seclusion, and abuse of process.

64. The Defendant had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that cases are not pursued without proper personal jurisdiction over the correct defendant, and in furnishing agents with accurate information when those agents rely on and use that information in attempting to collect debts.

### SECOND AND THIRD CAUSES OF ACTION
Negligence and Gross Negligence

65. Defendant, as a debt collector, owed Mr. Rivera a duty of reasonable care in its debt collection efforts.

66. Defendant's failure to exercise even slight care or diligence amounts to gross negligence.

67. Defendant failed to exercise reasonable care in reviewing Mr. Rivera's Exemption

Claim Form and supporting evidence of the exempt status of the funds restrained.

68. As a result of Defendant's actions, Mr. Rivera was injured.

69. In addition, Defendant's actions evince a reckless disregard for the rights of others and smack of intentional wrongdoing.

70. Defendant's conduct was part of a broader pattern of misconduct aimed at the public in general.

71. To the extent this claim is inconsistent with allegations of intentional conduct, this claim is pleaded in the alternative.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

    a. A declaration that Tenaglia has committed the violations of law alleged in this action;

    b. Statutory damages;

    c. Reasonable attorney's fees and costs;

    d. Actual damages;

    e. Compensatory damages;

    f. Exemplary and punitive damages;

    g. Prejudgment and post judgment interest as allowed by law;

    h. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated: January 22, 2026

15

Respectfully submitted,

By:    */s/  Ahmad Keshavarz*
      LAW OFFICE OF AHMAD KESHAVARZ
      Ahmad Keshavarz, Esq.
      16 Court St., Suite 2600
      Brooklyn, NY 11241
      Phone: (718) 522-7900
ahmad@NewYorkConsumerAttorney.com